Dennis **HANRAHAN**, Appellant,

v.

**CITY OF ANCHORAGE**, Appellee.

No. 247.

Supreme Court of Alaska.

Dec. 31, 1962.

---

382

James K. Tallman of Bell, Sanders & Tallman, Anchorage, for appellant.

Harland W. Davis and Burton C. Biss, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an appeal from a decision of the superior court affirming the conviction on June 1, 1961, of the appellant, Dennis Hanrahan, by the district magistrate's court for failure to yield a right of way, in violation of section 19–85 of the Code of Ordinances of the City of Anchorage.[1] The hearing on appeal in the superior court was entirely upon the record.

We shall briefly state the facts of the case appearing in the record as they pertain to the four errors specified by the appellant.

On May 10, 1961, the arresting officer in this case was traveling in a patrol car north on Spenard Road, an arterial street. He observed a Pontiac car following him at a distance of about two car lengths. At the same time the appellant, who was driving alone in his car, had approached the same arterial from a side road. The officer saw him pause at the intersection long enough to let the patrol car pass and then enter the arterial and fall in behind the officer, directly in front of the Pontiac which had to slow down considerably to permit the appellant's maneuver.[2]

The appellant testified that he was operating his car with an illegal muffler—"noisy

1. Section 19–85 of the Anchorage Code of Ordinances provides:

"The driver of a vehicle entering an arterial street or highway, as designated in accordance with this chapter, shall yield the right-of-way to all vehicles approaching on such streets or highways."

2. The record does not reveal how the officer managed to see what transpired behind him with respect to the Pontiac and the appellant's car, so we assume that he made his observations through a rearview mirror.

pipes" as he put it, and therefore did not want to enter the arterial in front of the police car and be detected. He claimed that he made a left hand turn and "pulled out safely" onto Spenard Road, because the Pontiac was seven or eight car lengths behind the patrol car; that the officer did not stop him and give him a citation until the cars had traveled a number of blocks farther and then only because the appellant ran out of gas and pulled over to the side of the road.

The driver of the Pontiac is not identified in the record before us. Nor is there any indication that he was stopped and questioned by the officer or made any complaint of his own against the appellant. Though only nineteen years of age, the appellant admitted that during a period of about nine months immediately preceding the trial of this action in the magistrate court he had received six other citations for traffic violations including failure to have a driver's license, speeding, driving with an obstructed windshield on one occasion and with improper lights on another.

It appears that the appellant declined to pay to the city traffic bureau the usual eight dollar fine established by schedule of the magistrate and instead elected to enter a plea of not guilty and stand trial. He was duly tried by the district magistrate, without a jury, and sentenced to serve five days in jail. The magistrate also recommended to the Department of Public Safety that the appellant's license be suspended for three years.

█ In his first specification of error the appellant insists that he should have been granted a trial de novo in the superior court because the written transcript prepared from the electronic record made of the proceedings in the magistrate court reveals that fifteen portions of that record were inaudible. However, in his brief he does not explain how a more complete transcript would have aided his cause. No effort seems to have been made by him to have the inaudible portions reconstructed from the memory of the parties and the magistrate. In oral argument before this court, counsel for the appellant frankly admitted that the record was complete enough so that he was able to adequately prepare the appeal.[3] Alaska law specifically provides that all appeals from the magistrate court "shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part."[4] We find no abuse of discretion here on the part of the superior court and therefore no error.

Next the appellant charges that it was error for the magistrate to impose an authorized but higher penalty than the usual eight dollar penalty assessed against a party for a like offense who waives trial and enters a plea of guilty. He maintains that this treatment accorded him by the magistrate and affirmed by the superior court denied him equal protection under the law as required by our state constitution.[5]

█ It is true that the usual penalty for the type of offense we have here, upon a plea of guilty, adds up to eight dollars under a fine schedule established by the district magistrate.[6] By city ordinance the appellant was entitled to pay this fine to the city traffic violations bureau upon entering

3. For cases in which the record was so defective that it precluded the adequate review of an issue and therefore made the issue of a new trial important, see Montgomery v. Board of Administration, 34 Cal.App.2d 514, 93 P.2d 1046, 94 P. 2d 610 (1939); Take v. Powell, 138 Okl. 244, 280 P. 811 (1929); Hayden v. City of Astoria, 74 Or. 525, 145 P. 1072 (1915).

4. SLA 1959, ch. 184, § 20(3), as amended by SLA 1960, ch. 5, § 3. See Lee v. State, Opinion No. 107, 374 P.2d 868 (Alaska 1962).

5. Alaska Const. art. I, § 1 provides in part: " * * * that all persons are equal and entitled to equal rights, opportunities, and protection under the law * * *."

6. The appellant argued that the fine schedule was established by the City of Anchorage but offered no proof in that respect. Section 19–191(b) of the Code of Ordinances plainly states that "the magis-

a plea of guilty and waiving appearance in court or, in the alternative, to deposit bail upon a plea of not guilty and stand trial.[7] He chose the latter course. Thereupon the fine schedule no longer applied in his case and the appellant assumed the risk of having a more severe penalty imposed upon him, up to the maximum authorized by law or ordinance, in the event that he should be found guilty. He was tried, found guilty and sentenced to serve five days in jail. In addition the magistrate recommended to the Department of Public Safety that the appellant's driver's license be suspended for three years. The sentence imposed did not exceed the limits fixed by city ordinance for such a violation [8] and the recommendation for suspension of license was authorized by statute.[9]

The appellant takes the position that the harsh penalty assessed against him after conviction on a plea of not guilty in the face of the much lighter penalty that he would have suffered if he had pleaded guilty, must have been in support of a policy of the magistrate to discourage a citizen from protesting traffic violation tickets and the assessment of fines regardless of the merits of his case. It could be argued with equal force that the purpose of the fine schedule is to save the time of the motorist, who has been charged with a minor violation of a traffic ordinance by permitting him to appear at the traffic violations bureau and there pay a prescribed fine for the offense upon entering a plea of guilty. Be that as it may, there is no evidence before us to indicate that any such policy as that claimed by the appellant exists in the magistrate court at Anchorage or was employed against this appellant.

As a third ground for reversal the appellant alleges that "there was insufficient evidence to establish that any crime had been committed, since the evidence was uncontroverted that defendant [appellant] did yield right of way to the police car of the City's main witness."

The important question here is not what the appellant did upon entering the arterial street with respect to the patrol car but whether he should have yielded the right of way to the approaching Pontiac. The police officer testified that the Pontiac was following him "at a safe distance" of about two car lengths. The appellant said that the distance amounted to some seven or eight car lengths. There was also the uncontradicted testimony of the officer that the entrance of the appellant's car into the arterial street caused the Pontiac "to slow down considerably as he was in a 30-mile speed limit."

 Since the appellant has challenged the sufficiency of the evidence to sustain the conviction, this court may consider only the facts most favorable to the state and such reasonable inferences as the court, sitting as trier of the facts, may have drawn from them.[10] We find that the evidence of the police officer and the reasonable inferences to be drawn therefrom justify the conclu-

trate * * * shall specify by suitable schedules the amount of such fines for first, second, and subsequent offenses, provided such fines are within the limits declared by law or ordinance * * *."

7. Section 19-192(a) provides that
"Any person charged with an offense for which payment of a fine may be made to the traffic violations bureau shall have the option of paying such fine within the time specified in the notice of arrest at the traffic violations bureau upon entering a plea of guilty and upon waiving appearance in court; or may have the option of depositing required lawful bail and upon a plea of not guilty shall be entitled to a trial as authorized by law."

8. Anchorage Code of Ordinances § 19-196(a) declares that the maximum sentence for a violation of the kind here involved shall be a fine of $300 or imprisonment for thirty days or by both such fine and imprisonment.

9. Section 50-3-50(2) A.C.L.A.Cum.Supp. 1959. The record in this case does not disclose what action, if any, the Department of Public Safety has taken upon the magistrate's recommendation for suspension of license.

10. Goss v. State, Opinion No. 76, 369 P.2d 884-885 (Alaska 1962); Davis v. State, Opinion No. 75, 369 P.2d 879, 881-882 (Alaska 1962).

sion that the appellant unlawfully failed to yield the right of way.

This brings us to the fourth and last error specified by the appellant, namely, that he was deprived of his constitutional right to be advised of his rights before the magistrate court and his right to counsel. In fact he claims that he was never arraigned.

The procedure for arraignment in the magistrate court is set forth in Crim.R. 59 (b) and requires the magistrate to read the complaint to the defendant and furnish him with a copy thereof and to "inform the defendant of his right to counsel, to be admitted to bail, that he is not required to make a statement, and that any statement made by him may be used against him. * * *"

While the foregoing provisions of Crim.R. 59(b) as to arraignment must be complied with by the magistrate and the record must show that there was an arraignment,[11] it is not necessary that the details of the arraignment be set forth. Turning to the record before us we find this brief but meaningful entry in the magistrate's docket abstract: "Date Arraigned: June 1, 1961." That entry, we conclude, is sufficient to raise a presumption that the magistrate performed his duties properly with respect to the arraignment of the appellant.[12] The burden was upon the appellant to establish the contrary by factual proof. This he did not undertake to do.

Judgment affirmed.

11. The pertinent provision of Crim.R. 59 (h) provides:

"(h) *Record of Proceedings; Docket.* * * * The magistrate shall keep a docket of all cases filed before him, which shall show: * * * (4) the date of arraignment and plea * * *."

12. See Johnson v. United States, 225 U.S. 405, 411, 32 S.Ct. 748, 56 L.Ed. 1142, 1144 (1912).