U. B. EATON, Appellant,

v.

STATE of Alaska, Appellee.

No. 223.

Supreme Court of Alaska.

March 20, 1964.

Fred D. Crane, Fairbanks, for appellant.

Herbert D. Soll, Dist. Atty., Stephen S. DeLisio, Asst. Dist. Atty., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The appellant Eaton was tried for the murder of one Harril Barry, a Negro, and convicted of the included offense of manslaughter. The evidence produced by the state at the trial established the following facts: At about 9:30 o'clock on the evening of the alleged homicide, the appellant and Barry were present in a Fairbanks restaurant and poolroom known as the Fairbanks Recreation Center. There they became engaged in a fight in which Barry cut the appellant with a knife and threatened to kill him. After the fight, both men departed—separately.

Later that same evening Barry returned in his car, a Cadillac, and was in the process of parking it at the Recreation Center when a green car, body styled in the back like a torpedo, and resembling the car owned and operated by the appellant, pulled up beside the Cadillac. A witness who described the occupant of the green car said that he "looked like a colored man, that was medium or light skinned." [1] Just then a sound, like a gunshot, was heard and the green car pulled away, leaving the Cadillac with a broken window on the door next to the driver. The police arrived shortly and removed the body of a man from the Cadillac. There were particles

---

1. We surmise from our reading of the record that the appellant was a Negro and that the Fairbanks Recreation Center was operated and frequented by Negroes.

of glass and a large amount of blood on the front seat of the car.

Sometime before 10:25 o'clock on the night in question, Barry was admitted to the hospital at Fairbanks in a coma and with a tremendous wound in the forehead. He died the following morning. The doctor who performed an autopsy on Barry's body testified that he removed some shotgun wads and pellets of about twelve gauge size from the victim's wound which extended into the skull and brain. It was his opinion that Barry's death was caused by a gunshot wound in the brain and that the shot had been fired at close range. Three shotgun cases were found in Eaton's car —two live rounds and one empty.

When interrogated by the state police officers, the appellant admitted that after the fight at the Recreation Center he heard that Barry was going to kill him and so he took a single shot twelve gauge shotgun out of his car trunk and placed it on the front seat of the car. Later he drove abreast of Barry's car where it was parked in front of the Recreation Center, intending to try to make his peace with the victim. As he approached Barry, the latter seemed to reach for something, presumably a gun, whereupon the appellant picked up his shotgun and raised it in the direction of Barry's car. From that point on he claimed to have no recollection of events.

At the conclusion of the state's case in chief, the appellant moved for judgment of acquittal on the grounds that the prosecution had failed to prove the crime as charged and that the evidence was insufficient to sustain the verdict. The trial court denied the motion and its action in that respect is specified as error.

In his brief on appeal the appellant contends that the motion for judgment of acquittal should have been granted for the reason that the evidence against him was as consistent with his innocence as with his guilt and for the further reason that there was no evidence whatever of the existence of any weapon.

We have adopted for Alaska the rule that on a motion for judgment of acquittal the court must take the view of the evidence and the inferences therefrom which is most favorable to the prosecution.[2] Applying that rule in this case to the evidence detailed above and the reasonable inferences to be drawn therefrom, we cannot say that the trial court erred in its ruling on the motion. The appellant's motive for committing the crime charged, his opportunity and ability to commit the crime and a reasonable inference that he did commit the crime as charged, were sufficiently established at the conclusion of the state's evidence to warrant, at that stage of the trial, the denial of the motion for judgment of acquittal.

The other issue raised by the appellant in his brief is that the lower court committed prejudicial error in denying appellant's motion for a mistrial based upon an alleged improper testimonial statement made by Lt. Trafton, a police officer testifying for the state. In the course of his direct examination this witness stated that he was present at the city police station when another police officer, Trooper Barkley, was questioning the appellant about the shooting at the Recreation Center. The examination of Lt. Trafton then proceeded as follows until objected to by appellant's counsel, Mr. Crane:

"Q. Did you hear the conversation between Trooper Barkley and Mr. Eaton?

"A. Yes.

"Q. And what was the substance of that conversation?

"A. As I recall, Trooper Barkley was questioning Eaton along the lines of an admission that he had made to Mr. Barkley at that time concerning the shooting.

---

2. Goss v. State, 369 P.2d 884, 884–885 (Alaska 1962); Davis v. State, 369 P. 2d 879, 881 (Alaska 1962); Hobbs v. State, 363 P.2d 357, 358 (Alaska 1961).

"Q. All right, what did he say?

"A. Barkley?

"Q. Mr. Eaton.

"A. Mr. Eaton had admitted that he had done the shooting.

"MR. CRANE: Now just a minute. That's objected to, if the Court please. We ask that the answer be stricken, that there's no evidence in this case anyplace that Mr. Eaton has admitted any such thing. Not in the testimony of Barkley or anybody else. Further, it's prejudicial and should be stricken from the record."

The trial judge sustained the objection and ordered the statement stricken. This did not satisfy appellant's counsel, however, for he next moved for a mistrial on the ground that striking Lt. Trafton's statement would not erase its impression from the minds of the jury.

While the statement volunteered by the witness Trafton that the appellant admitted shooting Barry was improper and constituted error, we do not believe that it was so prejudicial as to call for the declaration of a mistrial. The court promptly ordered the offending statement stricken and also directed the jury by written instruction that they were to consider only evidence in the case and were not to consider any offer of evidence rejected by the court. In addition, Lt. Trafton resumed the witness stand at the conclusion of the arguments on the motion for a mistrial and admitted that his previous testimony regarding the conversation between the officers and the appellant was not entirely correct. Trafton then gave this more circumstantial account of what the appellant had admitted at the police station:

"Q. What was the statement that the defendant made?

"A. The statement that the defendant made was to the effect that he had had this argument with the victim, that he had gone to his vehicle and taken from his vehicle—the trunk of his vehicle—a .12 gauge single-shot shotgun; he removed it from the trunk in which it had been wrapped in a sleeping bag, placed it in the front seat of his vehicle. He had then driven in front of the Arcade [Recreation Center] and seeing Barry's car parked there, he stopped alongside of it. He got out of his car, approached Barry's car and asked him if he couldn't—or if they couldn't—settle the question some way. The defendant stated further that he saw Barry presumably reach for something and he thought it may have been a gun. He turned around to his own vehicle, picked up the shotgun and turned back toward Barry's car. At this point he claims a loss of memory. And he would go no further."

We are of the opinion that these curative measures were sufficient to overcome the appellant's charge of prejudicial error in the trial court's refusal to grant a mistrial.

Judgment affirmed.