Marvin Thomas JENNINGS, Appellant,

v.

STATE of Alaska, Appellee.

No. 581.

Supreme Court of Alaska.

July 28, 1965.

Warren A. Taylor and Harris R. Bullerwell, Taylor & Bullerwell, Fairbanks, for appellant.

Thomas E. Fenton, Dist. Atty., and C. L. Craven, Asst. Dist. Atty., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

The appellant, Marvin Jennings, was indicted for second degree murder and found guilty by a jury of involuntary manslaughter in connection with the death of Kenneth Anderson. Jennings contends that there was insufficient evidence of guilt to justify submitting the case to the jury and, therefore, that his motion for judgment of acquittal ought to have been granted.

Uncontroverted evidence, consisting of photographs of Anderson taken shortly after his death and the testimony of witnesses, showed that both of Anderson's eyes were blackened and swollen shut, that the right side of his face from below the level of the jaw well up into the hairline was bruised and swollen, that there were two small puncture marks between the eyes above the bridge of the nose, that there were lacerations on the forehead and under the right eye, and that the area of the forehead between the eyes was badly swollen.

An autopsy revealed the presence of a bloody mass underneath Anderson's scalp on the right side of the skull above the right ear, and the presence of a large adherent blood clot around the base of the brain. Dr. Evans, who performed the autopsy, said that the brain injury was acute, that it would have caused a coma and vomiting, and that Anderson had died as a result of aspiration of the vomitus. Dr. Evans also testified that in his opinion the appearance of Anderson's face and head as he observed them could not have been caused by a single blow, but rather by multiple blows; that the external injuries to the face and head and the internal injuries to the brain occurred at the same time; and that the injuries to the head and brain were sufficient in themselves to cause death.

Anderson and Jennings had been in a fight in the latter's home. Jennings testified that he and Anderson had been drinking rather heavily, that Anderson tried to pick a fight and suddenly hit Jennings in the face, that Jennings then hit Anderson one blow on the nose, that in the ensuing scuffle both men fell to the floor with Anderson on the bottom, that the right side of Anderson's head hit a steel hot air register in the floor, and that no further blows were struck. Jennings said that he and his wife lifted Anderson from the floor to a bed where he remained in an unconscious state until an ambulance came and took him to the hospital.

Mrs. Jennings, called as a witness by the State [1], told substantially the same story as her husband, except that she did not know whether or not Anderson had fallen on the hot air register. The ambulance driver who delivered Anderson to the hospital testified that Jennings had told him that Anderson had had a few drinks and had fallen down and struck his head on a desk a couple of times. A state police officer who investigated the incident testified that Mrs. Jennings had shown him where Anderson had fallen to the floor, and that

---

1. Criminal Rule 26(b) (2) provides in part:

    A husband shall not be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent * * *.

Jennings consented to his wife testifying as a witness for the State.

there was no hot air register or any kind of a grate near that area.

In Bush v. State[2] we said:

> On a motion for a judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury. [Footnotes omitted.]

We hold that the evidence was sufficient to warrant submitting the case to the jury on the principal charge of second degree murder. Anderson's injuries were such that fair minded persons could conclude beyond a reasonable doubt that the account of the altercation given by Jennings and his wife was less than the whole truth, and that Jennings, purposely and maliciously and without justification, had kicked or beaten Anderson with such force as to cause his death.

The State's case against Jennings was entirely circumstantial, i. e., Jennings' guilt had to be inferred from evidentiary facts which did not include the testimony of any witness who observed Jennings inflict the injuries which caused Anderson's death. We held in Davis v. State[3] that where evidence of guilt was all circumstantial, it must be such as to exclude every reasonable theory consistent with the accused's innocence. Jennings contends that the evidence here did not meet that test.

This contention is disposed of by what we have said above as to the evidence being sufficient to warrant submission of the case to the jury. The test set down in the Davis case is equivalent to the rule established in Bush v. State[4], to the effect that a case should be submitted to the jury only if fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt had been established beyond a reasonable doubt. If they could not differ, but must necessarily have such a doubt, then a judgment of acquittal should be granted.[5] If the circumstantial evidence here had been such as to permit a reasonable inference that Anderson's fatal injuries were caused by events or circumstances other than a beating inflicted by Jennings, a reasonable doubt as to Jennings' guilt would in fact exist. Fair minded men could not then reasonably have differed on the question of whether there existed a reasonable doubt of Jennings' guilt, and therefore a judgment of acquittal would have been required.[6]

But under the evidence, Anderson's injuries and death could not reasonably be accounted for by any causes which would exonerate Jennings from responsibility. Jennings contends that Anderson could have received his injuries when he fell and hit his head and face on a heat register. Such a theory is completely unrealistic, considering the extensive nature of the damage to Anderson's head and face as testified to by witnesses and as shown by the photographs admitted into evidence.

The indictment for second degree murder charged that Jennings "did wilfully, unlawfully, feloniously, purposely and maliciously kill one Kenneth P. Anderson by beating him with his fists and kicking him with his

2. Opinion No. 265, 397 P.2d 616, 618 (Alaska 1964).

3. 369 P.2d 879, 882 (1962).

4. Supra note 2.

5. Curley v. United States, 81 U.S.App.D. C. 389, 160 F.2d 229, 232, cert. denied,

331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

6. State v. Bean, 77 Vt. 384, 60 A. 807, 814 (1905). See 1 Wharton, Criminal Evidence § 12, at 36 (12th ed. 1955).

feet about the head." Jennings contends that under this indictment he could be convicted only of second degree murder, voluntary manslaughter or assault and battery, and that it was error for the court to instruct the jury as to the crime of involuntary manslaughter.

■ Criminal Rule 31(c) provides that "The defendant may be found guilty of an offense necessarily included in the offense charged * * *." An offense is necessarily included in the offense charged where the former is of less magnitude than the latter but the gravamen of the two offenses is the same [7], or where one could not have committed the offense charged without also having committed the offense of lesser magnitude.[8]

■ In the court's instructions to the jury involuntary manslaughter was defined as the killing of a human being in the commission of an unlawful act, but without premeditation, deliberation, malice or specific intent to kill. The gravamen of involuntary manslaughter, as so defined, is a homicide which is unlawful—one that is not excusable under the law. Second degree murder is also a homicide which is unlawful—one that is not excusable under the law. It is true that second degree murder requires malice and a speific intent to kill, whereas involuntary manslaughter does not. But this difference relates only to the state of mind of the accused and bears upon the degree of punishment. The gravamen of the two offenses, an unlawful killing, is the same. The crime of involuntary manslaughter as defined by the court is necessarily included in the offense of second degree murder charged in the indictment.[9]

The statutes defining the different degrees of homicide do not use the term "involuntary manslaughter". Jennings contends that because of such omission the common law must be looked to, and that at common law involuntary manslaughter was a misdemeanor. Since a sentence of imprisonment for a misdemeanor may not exceed one year[10], Jennings argues that his sentence of imprisonment for six years was unlawful.

■ In its instructions to the jury, the court defined involuntary manslaughter as an unlawful killing, not accompanied by the elements of premeditation, malice and purpose such as would make the killing first or second degree murder. AS 11.15.040 defines manslaughter as an unlawful killing that does not amount to first or second degree murder. The crime of which Jennings was convicted, although called involuntary manslaughter in the instructions and in the verdict, was the same as the crime of manslaughter as defined by statute. Therefore, Jennings was convicted of a statutory offense, and recourse to the common law on the theory that involuntary manslaughter was a common law misdemeanor was not required or justified.

■ Jennings' final point on this appeal is that the court erred in not providing for the jury a form of verdict reading: "Not guilty by reason of excusable homicide."

7. Barbeau v. United States, 193 F.2d 945, 947, 13 *Alaska* 551 (9th Cir. 1951), cert. denied, 343 U.S. 968, 72 S.Ct. 1064, 96 L.Ed. 1364 (1952).

8. Mahle v. State, 392 P.2d 19, 20 (Alaska 1964); House v. State, 186 Ind. 593, 117 N.E. 647, 648 (1917); Giles v. United States, 144 F.2d 860, 861, 10 *Alaska* 455 (9th Cir. 1944); James v. United States, 238 F.2d 681, 683, 16 *Alaska* 513 (9th Cir. 1956); Larson v. United States, 296 F.2d 80, 81 (10th Cir. 1961).

9. United States v. Barbeau, 92 F.Supp. 196, 200, 12 *Alaska* 725, 733 (D.Alaska 1950), aff'd., 193 F.2d 945, 947, 13 *Alaska* 551 (9th Cir. 1951), cert. denied, 343 U.S. 968, 72 S.Ct. 1064, 96 L.Ed. 1364 (1952).

10. AS 11.75.030 provides:
Crimes are divided into felonies and misdemeanors. A felony is a crime which is or may be punishable by imprisonment for a period exceeding one year. Every other crime is a misdemeanor.

.. Such a form of verdict was unnecessary. The jury was instructed that if they found that the killing of Anderson was excusable or accidental, that Jennings must be found not guilty of second degree murder, and not guilty of both voluntary and involuntary manslaughter. Forms of verdict for such findings were furnished.[11] These forms, when considered in the light of the court's instructions, were all that Jennings was entitled to have given to the jury to reflect its verdict.

The judgment is affirmed.

11. Verdicts IV and V read as follows:

VERDICT NO. IV.

We, the Jury duly impaneled and sworn to try the above-entitled cause, do find the defendant, Marvin Thomas Jennings, not guilty of second degree murder, not guilty of voluntary manslaughter, not guilty of involuntary manslaughter, but guilty of assault and battery.

VERDICT NO. V.

We, the Jury duly impaneled and sworn to try the above-entitled cause, do find the defendant, Marvin Thomas Jennings, not guilty of second degree murder, not guilty of voluntary manslaughter, not guilty of involuntary manslaughter, and not guilty of assault and battery.