Arthur Vernon WATSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 571.

Supreme Court of Alaska.

April 7, 1966.

John R. Strachan, Josephson & Strachan, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, John K. Brubaker, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Appellant was indicted for the first degree murder of Marion T. Grissom. After trial by jury he was found guilty of murder in the second degree. Appellant appealed and in Watson v. State of Alaska[1] this court reversed his conviction and remanded the case for a new trial.

Appellant's conviction was reversed because of error committed by the trial court in admitting certain hearsay evidence regarding appellant's temper. At appellant's first trial the prejudicial hearsay evidence was received under the following circumstances:

A state police officer testified that Mrs. Watson was in bed when he arrived at the scene. Approximately two hours later, near the end of the police investigation, she came into the living room, saw blood on the floor and asked what it was. When told that it was blood, she asked, 'From what?' She was informed that her husband had shot Grissom. The police officer testified that she then exclaimed, 'Oh, no', and turning to her husband said, 'It's your temper, your temper has done it again.' Another police officer also testified to essentially the same thing.[2]

This court rejected the state's contention that Mrs. Watson's statement was admissible under the res gestae exception to the hearsay rule.[3] It was further held:

1. 387 P.2d 289 (Alaska 1963).

2. Id. at 290–291.

3. Supra note 1, at 291. The state alternatively sought to sustain the admissibility of this evidence on the basis of

the rule that when an accused is silent in the face of an accusatory or inculpa-
tory statement, both the statement and the accused's failure to deny its truth are admissible in a criminal action as evidence of acquiescence by the accused in the truth of the statement or as indicative of a consciousness of guilt.
In Watson v. State, supra note 1, at 291–292, this court held that the above rule had no applicability to the facts of the case.

that the admission into evidence of this statement of Mrs. Watson was prejudicial error. This conclusion was reached on the basis that:

A jury would naturally assume that a wife, more than anyone else, would have a special familiarity with her husband's character and temperament. The purport of Mrs. Watson's statement was that she believed that Grissom had been killed because her husband had lost control of his temper. This aspect was emphasized by the district attorney in his argument to the jury. We cannot say with any degree of assurance that this expression of belief, coming from the lips of Watson's wife, did not cause the jury to entertain grave doubts that Watson was speaking the truth when he said that he had shot Grissom in self-defense. There must be a new trial.[4]

Upon remand and retrial of the second degree murder charge, appellant was again found guilty of second degree murder.[5] Appellant appeals from this second conviction.

In the present appeal appellant asserts that the trial court committed error in denying his motion for a new trial once he had shown that members of the jury had read a newspaper article, which appellant characterizes as "prejudicial," in the jury room before reaching their verdict.[6]

4. Supra note 1, at 292.

5. After remand the trial court concluded that the jury's verdict of guilty as to the second degree murder resulted in an acquittal as to the first degree murder charge.

6. The trial court denied appellant's motion for a new trial on this ground and sentenced appellant to fifteen years' imprisonment.

7. This article appeared on page 10 of the November 6, 1964, edition of the Anchorage Daily Times. The headline of the article read "New Watson Trial Begins."

8. Mr. Joe P. Josephson, who was appellant's trial counsel at the second trial, states in an affidavit which he filed in support of appellant's motion for a new trial that:

The record discloses that on Friday, November 6, 1964, which was the last day of the trial before the jury was given the case for deliberation, the Anchorage Daily Times printed an article concerning appellant's first trial. This article in its pertinent parts stated that:

The state Supreme Court unanimously reversed the conviction saying Judge Hubert Gilbert's court had erred in admitting hearsay evidence from a state police officer on remarks Watson's wife made when told Watson had killed Grissom.

The remarks attributed to Mrs. Watson were 'Oh, no, it's your temper, your temper has done it again.'

The Supreme Court ordered a new trial.[7]

Approximately two weeks after the jury had returned its verdict in the second trial, appellant filed a supplemental memorandum in support of a motion for judgment of acquittal or in the alternative for a new trial. In this supplemental memorandum, appellant for the first time brought to the attention of the trial court the possibility that the jury might have read the November 6, 1964, article which appeared in the Anchorage Daily Times before they reached their verdict.[8]

Six affidavits from jurors were filed in support of appellant's motion for a new trial. The affidavit of juror Gene R.

It was not until several days following the jury verdict that affiant learned from juror, Mary Lou Obloy, by telephone, that the newspaper articles in question had been available to the jurors. That my [sic] reason of this, conversation with Mary Lou Obloy, affiant directed F. X. Wirth, Jr. and D. V. (James) Childers, investigators, to inquire of members of the jury panel in this case regarding the newspaper articles in question. That accordingly, affiant had no opportunity to bring the question of the newspaper articles and their reading by the jurors to the attention of this court prior to the time the jury was excused to deliberate.

I remember that the article stated that the original trial had been declared a mistrial by a higher court due to the

Jones is one of the more significant of these affidavits. In his affidvait, Mr. Jones stated in part:

> On the afternoon of November 6, 1964, I remember going downstairs in the State Court Building and buying an Anchorage Daily Times from the blind fellow who has the concession stand.
>
> I took this newspaper back to the jury assembly room as the jury was out of the courtroom on that date from 2:00 P.M. to approximately 4:00 P.M.
>
> In this Anchorage Daily Times newspaper of November 6, 1964, I remember reading an item pertaining to the State of Alaska vs. Arthur V. Watson case.

Two other jurors made affidavits to the same effect as the affidavit of juror Obloy.[9]

Our review of the record of the second trial, the newspaper article in question, and the jurors' affidavits, convinces us that appellant is entitled to a new trial.

In our recent opinion in West v. State,[10] we alluded to the fact that "It is the overwhelming weight of authority that a juror generally cannot impeach the jury's verdict by his testimony or affidavit." [11] In the *West* case we concluded that the facts there did not warrant permitting the juror to impeach his verdict.[12]

Of significance to this appeal is that portion of our opinion in West v. State [13] where Chief Justice Nesbett wrote:

> Exceptions to the general rule have been made and it has been held that the type of misconduct which may impeach a verdict is fraud, bribery, forcible coercion or any other obstruction of justice. Whether the verdict should be set aside and a new trial ordered rests in the sound discretion of the trial judge, but generally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty and deprives a party of a fair trial.

We hold that appellant's showing in support of his motion for a new trial demonstrates that a case has been made out for an exception to the general rule which prohibits jurors from impeaching their ver-

---

allowance of hearsay evidence being introduced. I remember reading that this hearsay evidence was a statement made, I believe, by a police officer that Mrs. Watson had made some statement to the effect that Mr. Watson had an extreme temper. I remember this item being brought up in the jury room and someone making a statement to the effect that most of the testimony we had was hearsay testimony. I don't recall who made this statement. I could have taken this above-mentioned newspaper into the jury room. I do not recall specifically.

Juror Mary Lou Obloy, in her affidavit, stated in part:

> I also heard someone, I am not certain who it was, say that if Watson took the stand he might lose his temper or fly off the handle, or words to that effect.

9. Juror Lois Turinsky said substantially the same thing in her affidavit. She stated:

> I distinctly remember hearing the remark from someone that 'Watson might lose his temper if he took the stand', or words to that effect. I do not remember offhand who made this statement.

Juror Adele Kelly, in her affidavit, stated in part:

> I heard someone say that if Watson went on the stand, he might lose his temper or maybe fly off the handle while he was being questioned. I do not remember exactly who made this statement but I wondered at the time how anyone would know that he had a temper such as this indicated.

Juror Frances Frazier's affidavit related that she heard someone say "that the other trial was declared a mistrial because of hearsay evidence." Juror Martin P. Fliehler's affidavit was to the effect that juror Gene Jones purchased a newspaper on Friday and brought it back to the jury room.

10. 409 P.2d 847 (Alaska, January 21, 1966).

11. Id. at 852. For the policy reasons underlying this rule, we cited McDonald v. Pless, 238 U.S. 264, 267, 35 S.Ct. 783, 59 L.Ed. 1300, 1302 (1915).

12. Supra note 10, at 852.

13. Supra note 10, at 852.

dicts. We are of the further opinion that in view of the record in this case appellant's showing clearly establishes that he was deprived of a fair trial by virtue of the jury's knowledge of the contents of the November 6, 1964, article which appeared in the Anchorage Daily Times.

At the second trial appellant did not adduce any evidence on his own behalf. After the state had completed its case in chief appellant rested without offering any evidence. At no point in the transcript of the trial can there be found any reference to appellant's temper or to any statement by appellant's wife alluding to appellant's temper.

On the basis of the showing made by appellant in moving for a new trial, it is reasonable to conclude, and we so find, that the very same evidence which we found to be erroneously and prejudicially received in the first trial was once again erroneously considered by the jury in appellant's second trial.

At the second trial the prejudicial character of this statement of Mrs. Watson's was equally as great. The state's case against the appellant was primarily based upon circumstantial evidence. As in the first trial, the issues of whether or not the homicide was justifiable and whether or not the appellant acted in self-defense were submitted to the jury.[14] Here the very statement, which by virtue of the law of the case had previously been determined to be inadmissible and prejudicial, was actually before the jury without the knowledge of either the trial court or the respective counsel. Thus none of the traditional safeguards inherent in the presence and function of the trial judge and the re-spective opposing counsel were present to counteract this prejudicial and inadmissible hearsay statement of appellant's wife reported in the November 6 newspaper article.

On this issue we think the opinion of the Supreme Court of the United States in Marshall v. United States [15] is apposite. The question in the *Marshall* case was "whether exposure of some of the jurors to newspaper articles about petitioner was so prejudicial in the setting of the case as to warrant the exercise" by the Supreme Court of its supervisory power to order a new trial. In the *Marshall* case, petitioner had been charged with unlawfully dispensing a drug in violation of federal law. During the course of the trial, newspaper accounts as to petitioner's prior illegal practice of medicine had reached the jurors. It is also pertinent to note that at the trial the judge had ruled that evidence of petitioner's prior illegal practice of medicine was so prejudicial that it should not be received into evidence.

In a per curiam opinion in *Marshall*, the Supreme Court stated:

The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1029, 20 Ann. Cas. 1138. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that

---

14. AS 11.15.100 provides:
    The killing of a human being is justifiable when committed by any person
    (1) to prevent the commission of a felony upon him, or upon his * * * wife, * * *.
    Besides evidence of physical injuries on the persons of the decedent (other than the fatal bullet wound) appellant and appellant's wife, the record discloses that William Kitchens testified that appellant told him that the decedent "was rapin' his wife, and he shot him." The former Chief of Police of Kenai, Alaska, testified that appellant told him that Grissom had charged toward him at the time of the shooting.

15. 360 U.S. 310, 312–313, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250, 1252 (1959).

evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 U.S. 469, 475, 69 S. Ct. 213, 218, 93 L.Ed. 168, 173. It may indeed be greater for it is then not tempered by protective procedures.

In the exercise of our supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts * * * we think a new trial should be granted.[16]

■ Not unlike the *Marshall* case, the record of appellant's second trial discloses that the jurors were exposed to "information of a character" which this court had previously held so prejudicial as to require a new trial. Unlike the *Marshall* case, the trial judge in the case at bar had no opportunity to ascertain the impact of this evidence and to adopt appropriate protective measures before the jury was discharged. The prejudicial circumstances are stronger in this appeal than in the *Marshall* case. Under our concomitant supervisory power to formulate standards for the enforcement of criminal law in the courts of the State of Alaska, we are of the opinion that the trial court erred in not granting appellant's motion for new trial.

Appellant also asserts as error the trial court's failure to grant his motions for judgment of acquittal made after the state had rested its case in chief and renewed after the jury had returned its verdict of guilty of murder in the second degree. We are of the opinion that the trial court correctly denied appellant's motions for acquittal. In Davis v. State,[17] this court adopted the rule that when

[A]ppellants are challenging the sufficiency of the evidence to support the verdict and judgment, which is presented by the motions for acquittal, this court may consider only those facts heretofore recited which are most favorable to the state and such reasonable inferences as the jury may have drawn therefrom.[18]

Subsequently in Jennings v. State,[19] we had occasion to again refer to the rule enunciated in the *Davis* case. In this later opinion we stated:

The test set down in the Davis case is equivalent to the rule established in Bush v. State, to the effect that a case should be submitted to the jury only if fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt had been established beyond a reasonable doubt. If they could not differ, but must necessarily have such a doubt, then a judgment of acquittal should be granted.[20]

■ Viewing the facts and reasonable inferences therefrom in the light most favorable to the state, we are of the opinion that the evidence adduced by the state precluded the granting of appellant's motions for acquittal under the *Davis* and *Jennings* tests.

In support of his contention that acquittal should have been granted, appellant also argues that the state's evidence failed to exclude every reasonable hypothesis excepting that of guilt.[21] This contention is disposed of by what we have said above as to the evidence being sufficient to preclude

16. Supra note 15, at 312–313, 79 S.Ct. at 1173, 3 L.Ed.2d at 1252.

17. 369 P.2d 879, 881 (Alaska 1962).

18. The rule articulated in Davis, supra, has been subsequently applied in Bush v. State, 397 P.2d 616, 618 (Alaska 1964); Eaton v. State, 390 P.2d 218, 219 (Alaska 1964); Daniels v. State, 388 P.2d 813, 816 (Alaska 1964); Hanrahan v. City of Anchorage, 377 P.2d 381, 384 (Alaska 1962); Goss v. State, 369 P.2d 884 (Alaska), cert. denied, 371 U.S. 843, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962).

19. 404 P.2d 652 (Alaska 1965).

20. Id. 404 P.2d at 654.

21. In Davis v. State, supra note 17, 369 P.2d at 882, this court held that when the prosecution's case is based on circumstantial evidence it is

   incumbent upon the state to produce evidence of circumstances which excluded every reasonable hypothesis except that of guilt. In other words, the circumstantial evidence had to be such as to exclude every reasonable theory consistent with Davis' innocence.

the granting of appellant's motion for ac-quittal.[22]

For the reasons above stated, the conviction of appellant is reversed and the cause remanded for a new trial.

22. Jennings v. State, supra note 19, 404 P.2d at 654.