MATTER OF LOPEZ

In Deportation Proceedings

A-14611600

*Decided by Board July 19, 1971*

Respondent's conviction, upon his plea of guilty, of the offense of manslaughter in violation of Alaska Statutes 11.15.040 "as charged in the indictment", which indictment states that respondent "did unlawfully and feloniously kill" another person "by shooting him with a gun", is not a conviction of a crime involving moral turpitude, since the statute involved encompasses both voluntary and involuntary manslaughter and it is not distinctly set forth in the indictment that the offense was voluntary rather than involuntary manslaughter.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude within five years after entry—manslaughter.

ON BEHALF OF RESPONDENT:
Roger F. Holmes, Esquire
Burr, Pease & Kurtz, Inc.
825 W. Eighth Avenue
Anchorage, Alaska 99501
(Brief filed)

ON BEHALF OF SERVICE:
B. G. Greenwald
Trial Attorney
(Brief filed)

This is an appeal from an order of the special inquiry officer, dated April 12, 1971, finding the respondent deportable under section 241(a)(4) of the Immigration and Nationality Act, because of a conviction for a crime involving moral turpitude (manslaughter) within five years of entry. The appeal will be sustained.

The respondent is a 43-year-old married male, a native and citizen of the Republic of the Philippines, who was admitted as an immigrant on February 8, 1966. The record indicates that he was convicted, on April 10, 1970, upon his plea of guilty, of the offense of manslaughter in violation of Alaska Statutes 11.15.040 "as charged in the indictment"

The single issue presented by this appeal is whether or not the offense for which respondent was convicted is an offense involving moral turpitude within the contemplation of the immigration and nationality laws.

The presence or absence of moral turpitude must be determined in the first instance from a consideration of the crime as defined by the statute. It is only when the statute includes within its scope offenses which do and some which do not involve moral turpitude that we turn to a consideration of the indictment, plea, verdict and sentence, *Matter of S—*, 2 I. & N. Dec. 353 (BIA, 1945 and A.G., 1945), at page 357.

It is well settled that the definition of a crime must be taken at its minimum, *Matter of B—*, 4 I. & N. Dec. 493 (BIA, 1951), and that voluntary manslaughter involves moral turpitude, although involuntary manslaughter does not, *Matter of B—, supra.* Therefore, we must establish whether the respondent was convicted of voluntary manslaughter or involuntary manslaughter.

We find that the statute under which respondent was convicted, Alaska Statutes 11.15.040,[1] makes no distinction between voluntary and involuntary manslaughter, *Jennings v. State*, 404 P.2d 652 (Alaska 1965).[2] In the present case the indictment charged:

That on or about the 18th day of March, 1969, at or near Cold Bay, in the Third Judicial District, State of Alaska, Agripino Santos Lopez did unlawfully and feloniously kill James J. Schiavone by shooting him with a gun. All of which is contrary to and in violation of AS 11.15.040 and against the peace and dignity of the State of Alaska.

The special inquiry officer based his determination upon the ruling found in *Matter of S—*, 2 I. & N. Dec. 559 (C.O., 1946; BIA, 1946; and A.G., 1947), a case in which an Ohio manslaughter statute was considered. It was also found to make no distinction between voluntary and involuntary manslaughter. The case was finally decided by the Attorney General who found, at page

---

[1] Except as provided in sections 10–30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

[2] The court said: "The crime of which Jennings was convicted, although called involuntary manslaughter in the instructions and the verdict, was the same as the crime of manslaughter as defined by statute." We note that the accused was found guilty of involuntary manslaughter even under a second degree murder indictment charging that he "did willfully, unlawfully, feloniously, purposely and maliciously kill. . . ."

570, that the convictions did involve voluntary manslaughter inasmuch as the original indictment, for second degree murder, clearly charged the alien with voluntary killing. We noted, at page 560, that "the indictment in each instance alleged that the respondent 'unlawfully, purposely and maliciously killed'."

The present case is distinguishable from the following cases referred to by the special inquiry officer, in each of which we held either there was an actual conviction for voluntary manslaughter or the wording of the indictment indicated voluntariness. In *Matter of Abi-Rached*, 10 I. & N. Dec. 551 (BIA, 1964), there was an actual conviction for voluntary manslaughter (under an indictment charging murder, manslaughter and involuntary manslaughter). In *Matter of Sanchez-Marin et al*, 11 I. & N. Dec. 264 (BIA, 1965), we stated that the indictments of two aliens "clearly charge them with a voluntary killing," while a third alien was convicted of the same crime as an accessory after the fact. In *Matter of Ptasi*, 12 I. & N. Dec. 790 (BIA, 1968), which relied upon *Matter of Sanchez-Marin et al, supra*, the actual wording of the indictment is not included in our decision, but we held it was apparent that the alien had been convicted of voluntary manslaughter.

Another case relied upon by the special inquiry officer, *Matter of N—*, 1 I. & N. Dec. 181 (BIA, 1941), involved manslaughter which we found did not involve moral turpitude. In that case we said: "From the facts set forth in the statement of the county attorney it is clear that in this instance the offense was of the second type, i.e., involuntary."

The inclusion of the term "feloniously" in the indictment does not compel a contrary result. In *Matter of B—*, 4 I. & N. Dec. 493 (BIA, 1951), where the word "feloniously" was included in the indictment, we found that we still could not say that the offense was voluntary manslaughter if it was not distinctly set forth in the indictment. (See footnote 2, supra.)

We cannot assume the respondent pleaded guilty to voluntary manslaughter rather than involuntary manslaughter. Since the burden is upon the Service, we must take the case in the light most favorable to the respondent and assume that the plea of guilty concerned involuntary rather than voluntary manslaughter, *Matter of Espinosa*, 10 I. &N. Dec. 98 (BIA, 1962).

We find, then, that the respondent was convicted of the crime of involuntary manslaughter, a crime not involving moral turpi-

de. Hence, he does not fall within the class of persons deporta-
e under section 241(a)(4) of the Immigration and Nationality
ct, and the appeal should be sustained. Accordingly, we enter
e following order.

**ORDER:** The appeal is sustained and these proceedings are ter-
inated.