**Filipo MARTINEZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 662.**

Supreme Court of Alaska.

Feb. 6, 1967.

Alan Merson and John R. Strachan, Anchorage, for appellant.

Thomas E. Curran, Jr., Dist. Atty., and Robert N. Opland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

NESBETT, Chief Justice.

A jury found appellant guilty on both counts of an indictment charging him with first degree murder and murder committed during an attempted rape.

■ All of the evidence was circumstantial. The principal point raised by appellant's court appointed counsel is that the evidence did not meet the standard required by this court in Davis v. State.[1] In *Davis* we held that where all of the evidence was circumstantial "it was incumbent upon the state to produce evidence of circumstances which excluded every reasonable hypothesis except that of guilt". This same point was argued by the appellant in Jennings v. State[2] and we explained in that opinion that the test laid down in *Davis* was the equivalent of the rule enunciated in Bush v. State[3] where we said:

> On a motion for a judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury. (Footnotes omitted.)

We are of the opinion that the rule as enunciated in Bush v. State is more easily understood and applied than the form originally announced in Davis v. State. For this reason we shall hereafter employ the phraseology of *Bush*. Our most recent decision on this point, Allen v. State,[4] is to the same effect.

Appellant argues that the testimony of several prosecution witnesses that they observed scratches on appellant's face which they had not observed earlier in the day, and the testimony of Doris Walker that she had seen decedent join appellant and walk with him, were the only two threads of evidence linking appellant with the crime.

Appellee argues that the evidence clearly established that the crime of murder by manual strangulation was committed on Marsha Knighten, age 12, and summarizes the evidence linking appellant with the crime as follows: appellant was the last person seen with the victim at approximately 3:20 p. m. on March 30, 1965, walking in the direction of appellant's home. The testimony of Doris Walker was that she had seen appellant a couple of times before at Marsha Knighten's father's house; that Marsha had left her company as they were walking home from school together to secretly follow appellant to learn where he lived and that appellant had discovered her following him, whereupon Marsha joined him and walked with him in the direction of his home. Paula Malvo, who had been walking home from school behind Marsha Knighten and Doris Walker, testified that in the vicinity of Jim's Grocery she called to Marsha to walk home with her, but that Marsha walked away in the vicinity of 12th and Karluk Streets; that she then ran to East 13th and Juneau Streets expecting to see Marsha appear; that she waited about 5 minutes and when Marsha did not appear she went home. The house in which appellant roomed was located on the northeast corner of 12th and Juneau Streets.

1. 369 P.2d 879, 882 (Alaska 1962).
2. 404 P.2d 652 (Alaska 1965).
3. 397 P.2d 616, 618 (Alaska 1964).
4. 420 P.2d 465 (Alaska, November 28, 1966).

Marsha Knighten's body was found in a garbage can behind appellant's rooming house. A blood smear was found on the ironing board cover in the utility room and scuff marks were noted on the kitchen floor in the house. Stains resembling semen stains were found on appellant's bed sheet and semen stains were found on the victim's skirt and panties. The marks of a child-sized shoe were seen on appellant's bed sheet and on the wall near appellant's bed. Marsha Knighten's absence was noted at about 6:30 p. m. on March 30, 1965, and a search commenced. Medical testimony was to the effect that the condition of the body when examined was not inconsistent with the crime having been committed between 3:30 p. m. and 6:30 p. m. on March 30, 1965. Appellant gave inconsistent explanations of the origin of the scratch marks first observed on his face by witnesses at about 5 p. m. on March 30, 1965. Appellant's testimony that he had acquired the scratches in a fight on March 29, 1965, was directly contradicted by the testimony of Mitchell Walker, a barber, that appellant had no scratches on his face when he trimmed appellant's mustache and sideburns at about 2 p. m. on March 30, 1965.

■ We are of the opinion that the circumstantial evidence produced by the state satisfies the rule of Bush v. State, that is, that it was such that fair minded men in the exercise of reasonable judgment could differ on the question of whether appellant's guilt had been established beyond a reasonable doubt and that the trial court properly submitted the case to the jury. Therefore, the trial court did not err in denying appellant's motion for acquittal.

Appellant's second point is that his right to counsel under the sixth amendment and his right to the equal protection of the law under the 14th amendment to the United States Constitution were violated by the failure of the district magistrate [5] to appoint counsel for him at the moment of his arrest.

During the evening of March 30 an intensive search was conducted in and around appellant's residence. A garbage can, located where one containing the victim's body was later found, was examined by Alfred Knighten, the victim's father, at about 7 p. m. and again at about 10 p. m. in the presence of an officer. Appellant argues that because of these facts he was a prime suspect and that for all practical purposes when he was asked to and did accompany Officer Hibpshman to the police station for questioning at about 2:30 a. m. on March 31 he was under arrest. At about 4:30 a. m. on March 31 when Nancy Douglas observed the victim's school book under the garbage can lid on top of the garbage, she became suspicious and called the police. This resulted in the discovery of the body. Appellant was formally arrested immediately thereafter.

When questioned as to whether he had advised appellant of anything before taking him to the police station Officer Hibpshman replied:

Yes, sir.

\* \* \* \* \* \*

I advised him that he did not have to come to the station with me, that he did not have to talk to me, and that he did have a right to counsel. He said he already knew that.

Appellant was arraigned at 11 a. m. on March 31, 1965. The electronic recording of this proceeding discloses that appellant was advised by District Judge Vochoska in pertinent part as follows:

I advise you of your rights. First of all you have the right not to make any statement. Any statements you do make can be used against you. You have the right to be represented by an attorney and you have a right to a preliminary hearing \* \* \*. I'll ask you at this time do you have any plans to get an attorney? Do you want an attorney?

MR. MARTINEZ: Well, yes.

5. S.L.A.1966, chapter 24, § 3, effective July 1, 1966, changed the title of these judicial officers to "district judge."

THE COURT: You do want an attorney then? Alright. In the meantime I'll suspend further proceedings until you've had an opportunity to obtain an attorney * * *.

Bail was set at $100,000 and a preliminary hearing was ordered for April 16, 1965. On April 14, 1965, appellant was indicted by the grand jury for first degree murder. On April 15, 1965, appellant was arraigned and counsel were appointed to represent him. On April 19, 1965, appellant entered a plea of not guilty. On April 26, 1965, appellant filed a motion to dismiss the indictment because of the failure of the state to provide him with representation by counsel at all stages of the proceedings, which motion was denied. The original indictment was later dismissed and appellant was reindicted on June 16, 1965, on the two counts previously mentioned in this opinion. Appellant's renewed motions to dismiss because of his lack of counsel during all stages and for failure of the state to provide a preliminary hearing were denied.

Appellant cites the sixth amendment of the United States Constitution and article I, section 11, of the Alaska constitution, both of which provide that in all criminal prosecutions the accused shall have the right to the assistance of counsel for his defense. It is argued that pursuant to these constitutional provisions the Alaska Legislature enacted AS 12.25.150(b) which provides that immediately after an arrest a prisoner shall have the right to communicate with his attorney, with any relative or friend and that any attorney authorized to practice in Alaska, at the request of the prisoner, has the right to immediately visit the prisoner.[6]

Appellant argues that there can be no doubt that in Alaska a person has the right to retain an attorney immediately upon his arrest and asks if a different rule of law is to be applied to an indigent.

Appellant then cites Powell v. State of Alabama,[7] Escobedo v. State of Illinois,[8] and Jones v. United States[9] in concluding that under the law there is now an absolute right to counsel at the time of arrest, the denial of which is reversible error, and that an indigent's right to counsel is co-extensive with that of the wealthy defendant.

Appellant urges that the time from his arrest on March 31, 1965, until April 14, 1965, was a critical period; that if counsel had been appointed immediately after his arrest a meaningful autopsy could have been performed by an independent doctor to establish the time of decedent's death; that the fingernails of decedent could have been scraped to determine the race of her assailant and that a preliminary hearing could have been had to ascertain the nature of the evidence against appellant which would no doubt have prompted additional investigation.

Before attempting to dispose of the several facets of appellant's legal argument it seems advisable to consider recent decisions of the Supreme Court of the United States, two of which have been published since the briefs were submitted in the case before us.

In Escobedo v. State of Illinois,[10] relied upon by appellant, the court reversed appellant's conviction for murder. The legal basis for the Court's action is contained in the following language in the opinion:

where * * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a par-

6. AS 12.25.150(b) provides that:
 Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with his attorney and any relative or friend, and any attorney at law entitled to practice in the courts of Alaska shall, at the request of the prisoner or any relative or friends of the prisoner, have the right to immediately visit the person arrested.

7. 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

8. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

9. 119 U.S.App.D.C. 284, 342 F.2d 863 (1964).

10. 378 U.S. 478, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977 (1964).

ticular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799] * * * and * * * no statement elicited by the police during the interrogation may be used against him at a criminal trial.[11]

In Miranda v. State of Arizona,[12] decided on June 13, 1966, after the briefs herein were filed, the United States Supreme Court extended the doctrine of *Escobedo* and established as a constitutional requirement for the admissibility of statements obtained during custodial police interrogation that the suspect must have been warned prior to questioning that he had a right to remain silent, but that any statement he made might be used as evidence against him and that he had a right to the presence of an attorney, either retained or appointed. The holding of the court in *Miranda* is summarized in 384 U.S. at 444–445, 86 S.Ct. at 1612, 16 L.Ed.2d 706–707 as follows:

the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any signifi-

cant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. (Footnote omitted.)

In Johnson v. State of New Jersey,[13] decided on June 20, 1966, after the briefs herein were submitted, the court answered the question of whether its decisions in *Escobedo* and *Miranda* should have retroactive application. It held that *Escobedo* should be applicable only to those cases in which trial began after June 22, 1964, and that *Miranda* should be applicable only to those cases in which trial began after June 13, 1966.

Since the trial in this case began September 7, 1965, it follows that the doctrine of *Miranda* has no application. Since trial herein began after June 22, 1964, the

11. Id. at 490–491, 84 S.Ct. at 1765, 12 L. Ed.2d at 986.

12. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

13. 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

doctrine of *Escobedo* is applicable provided the facts of this case bring it within the scope of the decision in *Escobedo*.

In *Escobedo* the Supreme Court held that statements elicited by the police from one while in custody may not be used against him where the accused has not been effectively warned of his constitutional right to remain silent and his request for an opportunity to consult with his lawyer has been denied.

■ Here appellant was never questioned by the police after he was placed under formal arrest on the morning of March 31, 1965. No statement made by him after his formal arrest was attempted to be introduced, therefore *Escobedo* has no application to the facts from the time of his arrest onward.

Appellant argues, however, that he was for all legal purposes in police custody at 2:30 a. m. on March 31, 1965, when, prior to his formal arrest,[14] he was asked to and did accompany Officer Hibpshman to police headquarters where he was questioned and then taken home.

■ It is a fact that Officer Hibpshman testified at the trial to certain exculpatory statements made by appellant during the 2:30 a. m. questioning to the effect that he (appellant) had received the scratch marks on his face from two "unknown G.I.'s" in Fairview and that he had not seen the deceased since the previous Friday. It is undisputed however, that appellant was warned of his constitutional right to remain silent in a manner which was entirely adequate under the requirements of *Escobedo* when Officer Hibpshman advised him that he did not have to come to the station, that he did not have to talk to him and that he did have a right to counsel. Appellant's response was that he already knew that. He made no request with respect to counsel. Furthermore, *Escobedo* does not apply to exculpatory statements. The Supreme Court did not announce constitutional standards for the use of such statements until its decision in *Miranda* two years after its decision in *Escobedo*.

The last facet of appellant's argument on this point is based upon a line of United States Supreme Court decisions that begins with Powell v. State of Alabama[15] where the Court held that it was the duty of the court, in order to comply with due process of law, to assign counsel in capital cases early enough in the proceedings to permit them to render effective aid in the preparation and trial. In Hamilton v. State of Alabama[16] the Supreme Court held that even the entry of a plea of not guilty, without the assistance of counsel, at arraignment in a capital case, required reversal. The court held that under Alabama law arraignment was a critical stage in a criminal proceeding because the defense of insanity must then be pleaded or not at all unless the trial judge should, in his discretion, permit it to be pleaded later and because pleas in abatement and other motions were required to be made at that stage of the proceeding. Failure to provide counsel at this critical stage of the proceeding was held to be a violation of the accused's rights under the due process clause of the 14th amendment, entitling him to relief without any showing of prejudice.

In Gideon v. Wainwright[17] the doctrine of Hamilton v. State of Alabama was extended to require the appointment of counsel for all indigents charged with a felony unless the right was competently and intelligently waived.

In White v. State of Maryland[18] the accused was arraigned at a preliminary hear-

14. Marsha's body was found shortly after 6:30 a. m. on March 31, 1965, and appellant was then placed under formal arrest.

15. 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158, 172 (1932).

16. 368 U.S. 52, 54–55, 82 S.Ct. 157, 7 L.Ed.2d 114, 116–117 (1961).

17. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

18. 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

ing while without counsel and entered a plea of guilty. At his formal arraignment, at a later date, he was provided with counsel and entered a plea of not guilty. At the trial his original plea of guilty was introduced into evidence. It was argued that since a plea was not required to be made at the original arraignment, it was not a critical stage of the proceeding. The Supreme Court reversed the conviction stating, in part, that:

> Whatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a stage as arraignment under Alabama law.[19]

Perhaps the best analysis of the legal meaning of these cases is that contained in DeToro v. Pepersack[20] where the court stated at pages 343–344:

> In our view, Hamilton and White teach that an accused is denied rights afforded him under the sixth amendment when he is subjected to an arraignment or to a preliminary hearing without the assistance of counsel, where events transpire that are likely to prejudice his ensuing trial.
>
> \* \* \* \* \* \*
>
> Thus, the thrust of Powell's admonition that an accused has a right to counsel 'at every step in the proceedings against him,' as borne out by subsequent decisions, including Hamilton and White, seems to be that if the effectiveness of legal assistance ultimately furnished an accused is likely to be prejudiced by its prior denial, the earlier period may be deemed a critical stage in the judicial process and a conviction obtained in such circumstances is rendered invalid.

In applying the above rule to the facts before us the question is whether anything transpired prior to the appointment of counsel which prejudiced the effectiveness of counsel after appointment.

Appellant's argument is that if counsel had been appointed immediately after his arrest a meaningful autopsy would have been performed by an independent doctor to establish the time of death.

It is possible that appointed counsel might have caused an additional and more complete autopsy to have been performed during the time interval. It is also quite possible that he would not have moved for the production of such evidence, the effect of which he was totally unable to predict. Appointed counsel might have moved to have deceased's fingernails scraped to determine the race of her assailant but again, there is just as much, if not more, likelihood that he would not have taken the initiative to attempt to produce evidence which could have been detrimental to his client's defense. It is significant that no such motions were made after the appointment of counsel. Concededly, the body may have been buried by that time but nevertheless it could have been exhumed and an attempt made to obtain the evidence.

In Wilson v. Harris[21] the federal district court had granted habeas corpus on the grounds that if the accused had been represented by counsel at the preliminary examination he might have obtained accused's discharge, that he might have cross-examined the complaining witness, and that other matters might have been discovered which would affect defense strategy. The applicability of this reasoning was rejected on appeal. Preliminary examination under California procedure was held not to be a critical proceeding. The fact that collateral benefits might have accrued to the accused if he had had counsel was held to be no basis for holding that he had been deprived of a constitutional or any other right.

---

19. Id. at 60, 83 S.Ct. at 1051, 10 L.Ed.2d at 194.

20. 332 F.2d 341 (4th Cir.), cert. denied, 379 U.S. 909, 85 S.Ct. 198, 13 L.Ed.2d 181 (1964).

21. 351 F.2d 840, 844–845 (9th Cir. 1965), cert. denied, 383 U.S. 951, 86 S.Ct. 1213, 16 L.Ed.2d 213 (1966).

██ We do not believe that appellant was deprived of any constitutional right in the proceedings had in this case. At the time he was arraigned on a complaint on March 31, 1965, he was advised of his rights and asked if he wanted an attorney. When he advised the judge that he did want an attorney, the judge acquiesced and announced that further proceedings would be suspended until appellant had had an opportunity to obtain an attorney. No further proceedings were had on the complaint. When appellant was indicted by the grand jury, the complaint upon which he was arraigned on March 31 was dismissed. When he was arraigned on the indictment on April 15, 1965, attorneys Peter LaBate and Alan Merson were appointed to represent him. Pursuant to motions made by appointed counsel, the court ordered that the bed sheet from appellant's bed, pubic and mustache hairs, photographs of appellant, and certain of his clothing be produced for inspection. Appellant's bail was reduced to $25,000, a psychiatric examination was ordered, and the state was required to produce and permit appellant to inspect the autopsy report. Appellant has not drawn our attention to any specific circumstance, proceeding or event that existed or which occurred between March 31 and April 15 which prejudiced the defense efforts of counsel after they were appointed. Appellant's argument is based entirely on the speculation that if counsel had been appointed immediately upon his arrest they might have done certain things that might have benefited his defense. Speculation as to what might have been done, under the facts before us, cannot serve as a basis for inferring that appellant was deprived of counsel during a critical stage of his defense.

██ AS 12.25.150(b) [22] provides that the arrested person has the immediate right to communicate with his attorney and any relative or friend and that his attorney has the right of immediate visitation. It does not, however, even when read in relation to recent United States Supreme Court decisions, require the appointment of counsel for an indigent immediately after his arrest.

Appellant's last point is that he was not provided with a preliminary hearing in violation of his rights.

Before considering appellant's argument the relevant facts will be reviewed. Appellant was arrested on a complaint charging him with first degree murder. Arraignment on the complaint was held on the day of his arrest, March 31, 1965. This proceeding was suspended by the judge when appellant stated that he desired to obtain counsel. The preliminary hearing on the complaint was scheduled for April 16, 1965. On April 14, 1965, appellant was indicted for the same crime and the complaint was dismissed. On April 15, appellant was arraigned on the indictment and counsel appointed. The April 14 indictment was subsequently dismissed and appellant was reindicted on June 16, 1965. On July 2, 1965, appellant moved for dismissal of the indictment on the grounds that he had been denied the right to a preliminary hearing on the original complaint.

Appellant assigns as error the denial of the motion to dismiss. His supporting argument is, basically, as follows: (1) Failure to provide a timely preliminary hearing is a violation of rule 5 of Alaska's Rules of Criminal Procedure; (2) The preliminary hearing plays a vital role in pre-trial discovery in criminal cases and a contemporary reading of state and federal constitutions requires the holding of such a hearing.

The first facet of appellant's argument here is that the scheduling on March 31 of the preliminary hearing on the complaint for April 16 was a violation of Criminal Rule 5(d) (1) which provides in part that if the defendant does not waive preliminary

22. See note 6 supra and accompanying text.

examination "it shall take place within a reasonable time".[23]

Appellant contends that a delay of sixteen days is unreasonable and refers the court to the American Law Institute's 1930 draft of the Code of Criminal Procedure which proposed that no more than six days should transpire between arrest and preliminary hearing.[24] Appellant admits, however, that the above proposal was not adopted by the draftsmen of the Federal Rules of Criminal Procedure.

The construction given by the federal courts to rule 5(c) of the Federal Rules of Criminal Procedure, the counterpart of Alaska's Criminal Rule 5(d), is relevant. Rule 5(c) of the Federal Rules of Criminal Procedure states in part that "If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time". Federal decisions construing what is a reasonable time are contrary to appellant's position. In James v. Lawrence [25] the court said:

> As to the first continuance from February 20 to March 10: The Commissioner, in determining what is a reasonable time within which to accord arrested persons a preliminary examination, must necessarily consider time reasonably required for preparation by either the arrested persons or the United States. It cannot be said that eighteen days as such was an unreasonable time to allow to the United States to prepare to present * * * its case against appellants.

The court then held that a second continuance from March 10 to March 17, granted upon the condition that the preliminary examination would be held on the 17th unless the grand jury sooner either indicted or

discharged, was not unreasonable. The defendant in James v. Lawrence was free on bail during these periods, however. In Garrison v. Johnston [26] defendant was arrested on July 17 and preliminary examination was set for July 31. Successive continuances were granted to the United States from July 31 through September 10 when defendant was indicted. The court held that no constitutional right had been shown to have been violated.

We do not believe that sixteen days is an unreasonable length of time considering the serious nature of the charge, the fact that appellant was then without counsel but desired to procure counsel, and the fact that the state needed time to prepare its presentation.

We note from the transcript of the proceedings had at appellant's arraignment on the complaint that, when the appellant stated that he wanted an attorney, the judge did not inquire if he had the means to employ counsel. The judge remarked:

> You do want an attorney then? Alright. In the meantime I'll suspend further proceedings until you've had an opportunity to obtain an attorney * * *.

The courtroom context in which the exchange occurred may have justified the judge in assuming, as he apparently did, that appellant had the means and would make his own arrangements for counsel.

We do not believe it to be practicable to require that the preliminary hearing be held within a specific time. If it had been practicable we would have attempted to do so in Criminal Rule 5(d) rather than specify a "reasonable time". Whether or not the preliminary hearing has been held within a reasonable time must

23. Crim.R. 5(d) (1) states:
The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the magistrate shall forthwith hold him to answer in the court in which the offense is triable and shall admit the defendant to bail as provided by law and these rules. If the defendant does not waive examination, it shall take place within a reasonable time * * *.

24. Section 43 American Law Institute Model Code of Criminal Procedure.

25. 84 U.S.App.D.C. 355, 176 F.2d 18, 20 (1949).

26. 104 F.2d 128 (9th Cir.), cert. denied, 308 U.S. 553, 60 S.Ct. 107, 84 L.Ed. 465 (1939).

remain a question of fact to be determined from the facts of each case.

Where the charge is a serious one, the accused and his counsel may very well need and be able to usefully employ as much time as they can obtain from the court in order to prepare for the preliminary hearing. This same reasoning applies to the state. The legitimate needs of the accused and the state in the above respect must be considered by the judge in setting preliminary hearings and in passing on motions to accelerate or delay time. The setting of a preliminary hearing too soon after the arrest can, in many cases, work to the accused's prejudice by not allowing sufficient time to prepare for that proceeding.

 Appellant emphasizes the fact that he was in custody with very little hope of obtaining his freedom on $100,000 bail during the period between his arrest and the preliminary hearing.[27] The fact that the accused is in custody and that bail in a high amount has been established are factors to be considered by the judge in setting a preliminary hearing, but they are not the controlling factors. Even though it may be difficult or impossible for the accused to make bail, it is not necessarily in his best interest for the preliminary hearing to be scheduled immediately. The accused's and the state's motions to accelerate or continue the preliminary hearing for cause are to be passed upon by the judge in the light of what is reasonable.

Appellant next argues that the main function of Criminal Rule 5(d) is to provide pre-trial discovery for an accused.

Blue v. United States[28] is cited in support of the contention that one purpose of a preliminary hearing is to provide the accused with "a chance to learn in advance of trial the foundations of the charge and the evidence that will comprise the government's case against him".

 While it is true that a preliminary hearing usually affords the accused an opportunity to learn in advance of trial something of the nature of the evidence upon which the government will rely, we do not agree that its principal function is that of providing pre-trial discovery. The main purpose of a preliminary hearing is to protect the accused from unwarranted incarceration while awaiting action by the grand jury, by determining whether there is a basis for holding him until the grand jury has reviewed the facts. After the grand jury has acted on the accused's case and returned an indictment no reason exists for conducting a hearing to determine whether probable cause exists for detaining the accused. The fact that the grand jury acts on the accused's case before a scheduled preliminary hearing does not amount to illegal prejudice.[29]

The decision in Blue v. United States is considered to have been influenced in large part by the particular provisions of the District of Columbia Legal Aid Act[30] and is not applicable to the facts before us. In any event, subsequent decisions of the Court of Appeals for the District of Columbia seem to restrict considerably the scope of its decision in *Blue*.[31]

We do not, therefore, adopt appellant's contention that the main function of Alas-

---

27. Appellant's bail was not reduced to $25,000 until counsel had been appointed and appellant had been arraigned on the indictment.

28. 119 U.S.App.D.C. 315, 342 F.2d 894, 901 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965).

29. See United States ex rel. Cooper v. Reincke, 333 F.2d 608 (2nd Cir.), cert. denied, 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed.2d 181 (1964); Boone v. United States, 185 F.Supp. 411 (W.D.Ky.1959),

aff'd per curiam, 280 F.2d 911 (6th Cir. 1960); United States v. Lucas, 13 F.R.D. 177 (D.D.C.), aff'd per curiam, 91 U.S. App.D.C. 278, 201 F.2d 182 (1952); People v. Jackson, 48 Misc.2d 1026, 266 N.Y.S.2d 481 (Sup.Ct.1965).

30. 2 D.C.Code §§ 2201–2210.

31. See Crump v. Anderson, 122 U.S.App. D.C. 173, 352 F.2d 649 (1965); Powell v. United States, 122 U.S.App.D.C. 229, 352 F.2d 705 (1965) (dictum).

ka's Criminal Rule 5 is to provide to an accused a procedure for accomplishing pre-trial discovery. Limited discovery in criminal cases is afforded by Alaska's Criminal Rule 16 which permits the inspection and copying of tangible objects under certain conditions.[32] AS 12.45.050–80 permits the accused to demand the production of statements made by prosecution witnesses under certain circumstances. Alaska's Criminal Rule 22 permits the court to invite the attorneys to appear before it for pre-trial procedure where the defendant is represented by counsel.[33]

■ We are unable to accept appellant's argument that a contemporary reading of state and federal constitutions requires the holding of a preliminary hearing after an indictment has been returned on the same charges.[34]

The judgment below is affirmed.

32. Crim.R. 16 provides:

Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just.

33. Crim.R. 22 provides:

(a) At any time after the return of the indictment or the filing of the information the court may invite the attorneys to appear before it for a conference in open court, at which the defendant shall have the right to be present, to consider:

(1) The simplification of the issues;

(2) The possibility of obtaining admissions of fact and documents which will avoid unnecessary proof;

(3) The number of expert witnesses or character witnesses or other witnesses who are to give testimony of a cumulative nature;

(4) Such other matters as may aid in the disposition of the proceeding.

(b) The court shall make an order reciting the agreements made by the parties as to any of the matters considered, which shall be signed by the court and the attorneys for the parties, and when entered shall control the subsequent course of the proceedings, unless modified at the trial to prevent manifest injustice.

(c) This rule shall not be invoked in the case of any defendant who is not represented by counsel.

34. United States v. Smith, 357 F.2d 318, 320 (6th Cir. 1966). Crump v. Anderson, 122 U.S.App.D.C. 173, 352 F.2d 649, 652 (1965).