James Ernest DES JARDINS, Appellant,

v.

STATE of Alaska, Appellee.

No. 2280.

Supreme Court of Alaska.

March 8, 1976.

On Rehearing June 11, 1976.

H. Bixler Whiting, Whiting & Blanton, Fairbanks, for appellant.

David Mannheimer, Asst. Dist. Atty., Harry L. Davis, Acting Dist. Atty., Fairbanks, Avrum Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

BURKE, Justice.

James Des Jardins was convicted of manslaughter [1] and assault with a dangerous weapon [2] after a trial by jury. This appeal followed.

On the night of December 10, 1973, Daniel Cucuroll was hitchhiking with a friend, John Zdepski, along College Road, near Fairbanks, Alaska. James Des Jardins, accompanied by Stanley Zaverl, was driving a pickup truck along the same roadway. Des Jardins passed the hitchhikers without stopping. As he did so, Cucuroll kicked the side of his vehicle. Angered by the actions of Cucuroll, Des Jardins stopped. His passenger, Zaverl, jumped out and pursued the hitchhikers onto a lawn where he tackled Cucuroll some twenty feet from the roadway. Zdepski, the other hitchhiker, fell on top of Zaverl; Des Jardins pulled him off strik-

1. AS 11.15.080:
 *Negligent homicide.* Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable, is manslaughter, and is punishable accordingly.

2. AS 11.15.220:
 *Assault with dangerous weapon:* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment . . . .

ing him on the arm with a long object. Des Jardins started to chase Zdepski and then returned to Cucuroll and Zaverl, lying in the snow.

Zdepski, who was then standing in the street, and three people in a cab, who had stopped to watch the fight, all testified at trial that they saw a person standing and swinging a long object at the ground where Cucuroll lay. Zaverl, who lay next to Cucuroll throughout the fight, and Des Jardins testified that Des Jardins did not strike Cucuroll. Des Jardins and Zaverl got back in the pickup and drove away; they were apprehended a short time later.

Cucuroll subsequently died of a fractured skull and resulting brain damage. Zdepski suffered a bruise on his arm. The police discovered an iron rod with snow on it in the back of Des Jardins' truck, and Zdepski testified that it had been used by Des Jardins to strike him. Des Jardins admitted having something in his hand throughout the encounter, but stated that he thought it was his windshield scraper. He denied using the object to strike anyone.

Cucuroll had a laceration on his scalp over the skull fracture. F.B.I. laboratory tests of his parka and the iron rod were negative: no blood or hair was found on the rod; no rust was detected on the parka hood. The windshield scraper was not tested or introduced at trial. The owner of the lawn on which the incident occurred testified that there were no rocks or other hard objects in the area where Cucuroll had fallen.

Des Jardins has raised four points on appeal: that his motion for judgment of acquittal was erroneously denied; that a new trial should be granted because of the prosecutor's violation of Rule 16, Alaska Rules of Criminal Procedure, relating to discovery; that the instructions given to the jury were incomplete and erroneous; and that the judge erroneously failed to answer questions posed to him by the jury after it began its deliberations.

## I. MOTION FOR JUDGMENT OF ACQUITTAL

Des Jardins moved for a judgment of acquittal at the close of the state's case in chief, and again at the conclusion of his case. Both motions were denied. He alleges that this was erroneous, because while the evidence against him was entirely circumstantial, there was direct evidence, consisting of his own and Zaverl's testimony, that he did not strike Cucuroll. Des Jardins relies here on the rule in *Davis v. State,* 369 P.2d 879, 882 (Alaska 1962), which permitted a conviction based on circumstantial evidence only where every other reasonable hypothesis had been excluded. However, as even Des Jardins recognizes, this aspect of *Davis* has been disapproved.[3]

■ The standard which this court and the trial court must now use, instead of the *Davis* test, is as follows:

[T]he judge must take the view of the evidence and the inferences therefrom most favorable to the state. If the court determines that fair-minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then the case must be submitted to the jury.[4]

This test applies in cases where the evidence is direct and in cases based on evidence which is wholly circumstantial.[5]

3. *Daygee v. State,* 514 P.2d 1159 (Alaska 1973); *Davis v. State,* 499 P.2d 1025, 1035 (Alaska 1972); *Jordan v. State,* 481 P.2d 383 (Alaska 1971); *Martinez v. State,* 423 P.2d 700 (Alaska 1967); *Allen v. State,* 420 P.2d 465 (Alaska 1966); *Jennings v. State,* 404 P.2d 652 (Alaska 1965).

4. *Gray v. State,* 463 P.2d 897, 905 (Alaska 1970); *Allen v. State,* 420 P.2d 465 (Alaska 1966); *Jennings v. State,* 404 P.2d 652 (Alaska 1965); *Bush v. State,* 397 P.2d 616, 618 (Alaska 1964).

5. *Jordan v. State,* 481 P.2d 383 (Alaska 1971); *Martinez v. State,* 423 P.2d 700 (Alaska 1967).

In this case, the evidence is for the most part circumstantial: no one could positively identify Des Jardins as the person who hit Cucuroll, and no one could identify the iron rod as the object in the assailant's hand, or as the cause of Cucuroll's death. However, viewing the evidence in the light most favorable to the state, it can be reasonably inferred that Cucuroll died from a blow to the head, that the blows were inflicted by the person whom four witnesses saw hitting at the ground, that that person was Des Jardins, and that he had the iron rod in his hand.

In view of such evidence and the reasonable inferences to be drawn therefrom we believe that fair-minded people could differ on the question of whether guilt had been established beyond a reasonable doubt. The superior court properly denied Des Jardins' motions for judgment of acquittal.

## II. VIOLATION OF RULE 16

Des Jardins next urges reversal because of the prosecutor's refusal to disclose certain evidence and the identity of witnesses which are required by Rule 16, Alaska Rules of Criminal Procedure.[6] We agree

6. Rule 16, Alaska Rules of Criminal Procedure:

(a) *Scope of Discovery.* In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and the adversary system.

(b) *Disclosure to the Accused.*

(1) *Information Within Possession or Control of Prosecuting Attorney.* Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

(i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;

(ii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by the accused;

(iii) Any written or recorded statements and summaries of statements and the substance of any oral statements made by a co-defendant;

(iv) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons;

(v) Any books, papers, documents, photographs or tangible objects, which the prosecuting attorney intends to use in the hearing or trial which were obtained from or belong to the accused; and

(vi) Any record of prior criminal convictions of the defendant and of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial.

. . . . .

(3) *Information Tending to Negate Guilt or Reduce Punishment.* The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor.

(4) *Information Within Possession or Control of Other Members of Prosecuting Attorney's Staff.* The prosecuting attorney's obligations extend to material and information in the possession or control of

(i) members of his staff, and

(ii) any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.

(5) *Availability of Information to Defense Counsel.* Whenever defense counsel designates and requests production of material or information which would be discoverable if in the possession or control of the prosecuting attorney, the prosecuting attorney shall use diligent good faith efforts to make such material available to defense counsel. If the prosecuting attorney is unsuccessful and such material is subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel.

. . . . .

(7) *Other Information.* Upon a reasonable request showing materiality to the preparation of the defense, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by subsections (b)(1), (b)(2), (b)(3), and (b)(6).

. . . . .

with Des Jardins that the prosecutor's conduct was violative of Rule 16; however, we are unable to find sufficient prejudice to require reversal on such grounds. On the other hand, the lack of prejudice here was purely fortuitous. In future cases we will continue to scrutinize prosecutorial conduct in this area, and will not hesitate to reverse where it appears that the defendant has been prejudiced by such action.

We note at the outset that Des Jardins does not contend that there was any violation of his express constitutional rights, such as his right to effective counsel, or his right to cross-examine witnesses, nor does it appear that they were in fact compromised. Under the standard of *U. S. v. Augenblick*,[7] adopted for Alaska in *Torres v. State*,[8] we are unable to say that Des Jardins had a constitutionally unfair trial. In cases where there is error not of constitutional dimensions, we look to the "harmless error" test set out in *Love v. State*, 457 P.2d 622 (Alaska 1969):

> The pivotal question is what the error might have meant to the jury. Our function is to consider not how the error might have affected us if we had tried the case, but how it might have affected a jury of reasonable laymen. It is the

impact on their minds which is critical in determining whether an error impaired or affected the substantial interest of the defendant in having a fair trial.[9]

The trial in this case was set for April 15, 1974. At the omnibus hearing on March 22, 1974, Des Jardins' attorney informed the court that he had had some difficulty with police disclosure of the names of witnesses. The court ordered the District Attorney to provide, by March 29, the names of all persons contacted, the names of all the investigators who had worked on the case, the F.B.I. laboratory reports on the iron rod and parka, and the records of conviction of the state's witnesses. The District Attorney promised compliance with the court's order, and admitted that he had received the laboratory report.[10] However, by April 8, none of the requested material had been given to the defense, and Des Jardins moved for dismissal, or in the alternative for a continuance because of such nondisclosure. This motion was denied; later that day the defense was given the statement of Walter Ansaknok, an eye witness from Fort Yukon, and that of Joseph Cheek, who had come to the scene shortly after the incident, together with the F.B.I. laboratory report, which as mentioned, was negative. On April 10, the de-

---

(d) *Regulation of Discovery.*

. . . . .

(2) *Additional or Newly Discovered Information.* If, subsequent to compliance with these rules of [sic] orders issued pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of its existence. If the additional material or information is discovered during trial, the court shall also be notified.

. . . . .

(e) *Sanctions.*
(1) *Failure to Comply with Discovery Rule or Order.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed or en-

ter such other order as it deems just under the circumstances.
(2) *Willful Violations.* Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

7. 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537, 545 (1969).

8. 519 P.2d 788 (Alaska 1974). Both *Torres* and *Augenblick* involved non-disclosure of evidence to the defendant.

9. 457 P.2d at 630 (Alaska 1969).

10. It should be noted that a different district attorney, Robert B. Downes, assumed responsibility for the case after this point. Hereinafter our remarks concerning the prosecutor's conduct concern only Mr. Downes. None of the attorneys appearing for the state in this appeal participated in the trial.

fense was given photographs of Cucuroll's head injury, and the criminal record information on the state's listed witnesses; it appears that the check of these records was not begun until April 8. On April 11, defense counsel renewed his motion; the court declined to grant him a continuance in order to work on the new evidence, although trial was scheduled to begin four days later.

■ The prosecution not only delayed disclosure of evidence until just before trial, but it also used four witnesses at trial who were not even on the witness list given to defense counsel. One witness testified that the lawn on which the incident had occurred was free of hard objects; this testimony was elicited in the prosecution's legitimate rebuttal to the defense contention that Cucuroll had struck his head on a rock, and, therefore, he need not have been on the required witness list. The other three witnesses were Elva Ansaknok, an eye witness, Albert Cheek, who had accompanied his father Joseph to the scene after the incident, and Dr. Joseph K. Johnson, who had treated Zdepski and Cucuroll in the hospital emergency room after the incident. Defense counsel was not informed that these three witnesses would be called by the state until April 23, in the midst of trial. Elva Ansaknok and Albert Cheek testified on April 24; Dr. Johnson testified on April 23 concerning Zdepski's injury, and on the 29th in rebuttal concerning Cucuroll's laceration. Although the prosecutor had asked his investigator to make contact with Dr. Johnson, as a potential witness, on the 10th or 11th of April, he did not inform the defense about Dr. Johnson until the morning of the 23rd, when he delivered Dr. Johnson's formal statement. Dr. Johnson's statement did not mention the laceration on Cucuroll's scalp, but discussed his treatment of Zdepski.

■ No statements from Ansaknok or Cheek were ever given to the defense, and their testimony at trial had to be delayed while a check was made to see if they had criminal records. It appears that the prosecutor was aware that these people could testify to relevant information some time before defense counsel was informed of their identities. The state's attempt to characterize Dr. Johnson's testimony about Cucuroll as rebuttal, and its attempt to fit Ansaknok and Cheek into the category of newly discovered evidence, in these circumstances, are not persuasive. The conduct by the prosecutor severely limited the period of time in which Des Jardins' attorney could prepare his defense. The proper procedure for a trial court faced with prosecution failure to disclose to the defense evidence that it is required to provide, until just before it plans to use such evidence, is to grant a continuance long enough to allow the defense attorney adequate time to prepare.[11] Here, however, we are unable to say that the denial of a continuance had sufficient effect on Des Jardins' defense as to constitute reversible error under *Love v. State, supra.* Des Jardins' attorney conducted a vigorous and effective cross-examination of the unlisted witnesses; it does not appear that he was unable to discover materials useful for their impeachment. The laboratory reports were negative and thus did not require much preparation on the part of the defense. The evidence provided by the unlisted witnesses was for the most part repetitive. Elva and Walter Ansaknok offered similar testimony; Albert Cheek echoed his father's testimony; and, Dr. Johnson's testimony about Cucuroll's laceration followed introduction of the photographs, in which the laceration was visible.

The fact that we do not reverse on this ground, however, does not excuse the prosecutor's violation of Rule 16. This rule imposes a duty on the prosecutor to disclose the information listed in subsection (b) of the rule, and other information as

11. *People v. Reyes,* 12 Cal.3d 486, 116 Cal. Rptr. 217, 526 P.2d 225 (1974) ; *People v. McRae,* 256 Cal.App.2d 95 at 104, 63 Cal. Rptr. 854 (1968).

the court upon a showing of good cause may order. It is the prosecutor's obligation to use "diligent good faith efforts" to make all such discoverable material available to defense counsel. Here it appears likely that the prosecutor did not make good faith efforts to disclose information, even after a court order to that effect. Instead, the record shows a pattern of grudging, last minute disclosures, along with an unwillingness to respect the demands of the Rules of Criminal Procedure, and the court's order made pursuant to those rules.[12]

▆▆ Rule 16 was designed to further discovery, in order to eliminate jockeying for tactical advantage and trial by surprise. A prosecutor under the Code of Professional Responsibility has an obligation to disclose evidence which tends to negate guilt, mitigate the degree of the offense or reduce punishment.[13] This duty has been extended to include other categories of evidence by Rule 16,[14] and sanctions are provided for instances where the rule is willfully violated. Because we feel that a deliberate attempt may have been made here to avoid the obligation imposed on the prosecutor by the rule we remand this matter to the superior court with directions to conduct a hearing to determine whether sanctions should be imposed against trial counsel under Rule 16(e)(2), Alaska Rules of Criminal Procedure.

## III. ERRONEOUS AND INCOMPLETE INSTRUCTIONS

▆▆ Des Jardins next contends that it was error for the trial court to give certain instructions to the jury and to refuse to give certain additional instructions that he had requested.

He first argues that the trial judge erroneously instructed the jury on the crime of manslaughter, by separating it into two offenses, voluntary manslaughter and involuntary manslaughter, and instructing on each offense. It is true that there is only one statutory crime of manslaughter in Alaska, although it is defined in two statutes, AS 11.15.040 (manslaughter) and AS 11.15.080 (negligent homicide).[15] Involuntary manslaughter is not, under the statutes, a lesser crime than voluntary manslaughter; the court's instructions, however, in certain places describe it as a lesser offense. The instructions on involuntary manslaughter correctly state the law in all other regards. Although this aspect of the instructions was an incorrect statement of the law, we do not find that it was reversible error under *Love v. State, supra.* No substantial right of Des Jardins to a fair trial was impaired by the jury's misunderstanding of the relative seriousness of the crimes with which Des Jardins was charged. It seems unlikely that the jury relied upon involuntary manslaughter as being a lesser offense in choosing to convict Des Jardins on that charge.

Des Jardins also complains about the phrasing of certain instructions, and claims undue emphasis on conviction in certain others. These complaints have little merit. We have reviewed the instructions as a whole, and find that they are not misleading or biased toward conviction.

---

12. We recognize the likelihood that the prosecutor in this case believed that his actions were in the state's best interest. We note only that the public is poorly served by prosecutorial conduct that could jeopardize any subsequent conviction in a criminal case, particularly one as serious as this.

13. Disciplinary Rule 7–103, Code of Professional Responsibility.

14. *See also* A.B.A. Standards Relating to the Prosecution Function, § 3.11 (Approved Draft 1971).

15. AS 11.15.040:
 *Manslaughter.* Except as provided in §§ 10—30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less then one year nor more than 20 years.
 AS 11.15.080:
 *Negligent homicide.* Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable, is manslaughter, and is punishable accordingly.

Des Jardins' final allegation of error, relating to instructions, is that the court failed to give requested instructions on self-defense, justifiable homicide, and excusable homicide. The instructions proposed by defendant were not perfect statements of Alaska law in this area, but certainly sufficed to draw the matter of such defenses to the judge's attention.[16]

 There is no obligation on a trial judge to instruct the jury on a defense theory that has no support in the evidence.[17] Here the theories advanced by Des Jardins find no support in the evidence. There is no indication that Des Jardins acted in self-defense; Cucuroll did not make an aggressive move toward him but instead fled, until he was knocked down.[18] Similarly the defense of excusable homicide is not available to Des Jardins.[19] AS 11.15.110 [20] is intended to protect the person who kills another by accident in a fair and weaponless fight. The encounter between Cucuroll and Des Jardins cannot be described as a fight. Cucuroll was already on the ground when Des Jardins approached him, and there is no evidence to show that he offered any resistance to the blows being administered by Des Jardins with the instrument he was seen to have had in his hand. If the facts are viewed in line with Des Jardins' testimony, he never engaged in a fight with Cucuroll and never struck him. There is nothing in the record which could support such an instruction in the circumstances. Finally, Des Jardins failed to make the showing of necessity required to present the defense of justifiable homicide under AS 11.15.100[21] and *Gray v. State,* 463 P.2d 897 (Alaska 1970). The trial judge did not err in refusing to give these instructions.

## IV. QUESTIONS BY THE JURY

 Des Jardins' final contention on appeal is that the trial court erred in failing to respond to inquiries by the jury, and that as a result the jury remained confused on a critical issue in the case causing it to render an improper verdict. We note at the outset that, as a general rule, answering questions from the jury is within the trial judge's discretion.

 After jury deliberations had begun, a juror sent the following message to the trial judge:

The material allegations state that a metal bar was used. If I believe the

16. *Wilson v. State,* 473 P.2d 633 (Alaska 1970); *Pepsi Cola Bottling Co. v. Superior Burner Service Co.,* 427 P.2d 833 (Alaska 1967).

17. *Gray v. State,* 463 P.2d 897 at 909, n. 20 (Alaska 1970); *Hobbs v. State,* 363 P.2d 357 (Alaska 1961); *Reynolds v. U. S.,* 238 F.2d 460, 16 Alaska 502 (9th Cir. 1956); *State v. Kader,* 201 Or. 300, 270 P.2d 160 (1954).

18. *See* 1 Wharton's Criminal Law and Procedure, §§ 213 to 240 (Lawyers Coop. 1957); 1 Warren on Homicide, §§ 142, 148, 151, 158 (2nd Ed.1938); Wharton on Homicide, §§ 312–313 (3rd Ed.1907).

19. *See* 1 Wharton's Criminal Law and Procedure, §§ 211 and 212; 1 Warren on Homicide § 142.

20. AS 11.15.110:
*Excusable homicide.* The killing of a human being is excusable when committed
(1) by accident or misfortune in lawfully correcting a child, or in doing any other lawful act, by lawful means, with usual and ordinary caution and without unlawful intent; or
(2) by accident or misfortune in the heat of passion, upon a sudden and sufficient provocation, or upon a sudden combat, without premeditation or undue advantage being taken, and without a dangerous weapon or thing being used, and not done in a cruel or unusual manner.

21. AS 11.15.100:
*Justifiable homicide.* The killing of a human being is justifiable when committed by any person
(1) to prevent the commission of a felony upon him, or upon his husband, wife, parent, child, master, mistress, or servant;
(2) to prevent the commission of a felony upon his property, or upon property in his possession, or upon or in a dwelling house where he may be;
(3) in the attempt, by lawful means, to arrest a person who has committed a felony, or in the lawful attempt to suppress a riot or preserve the peace.

state has not proved this point, is that sufficient doubt to say not guilty? Is this compounded with equal opportunity of another to do the act sufficient to give a not guilty?

The judge, quite properly, did not answer this question. The question asked the judge to decide for the juror whether he had a reasonable doubt about Des Jardins' guilt; that decision, although perhaps difficult, was the juror's alone.

After approximately 24 hours of deliberation, the foreman, while conferring with the judge on another matter, presented the following question:

On the steel bar, as it was presented in evidence, is it necessary that it be considered the murder weapon in order to have conviction or nonconviction?

The judge declined to answer the question at that time and it was not repeated.

When a jury asks a judge about a matter on which it has received adequate instruction, the judge may in his or her discretion refuse to answer, or may refer the jury to the earlier instruction. When, however, the jury appears to be confused about a legal issue, and the resolution of the question is not apparent from an earlier instruction, the trial judge has a "responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy."[22]

The jury here did not receive a separate instruction on the metal rod referred to in the question. However, the rod was included in the material allegations of each instruction describing an offense. Des Jardins' action against Cucuroll was uniformly described as "striking him on and about the head with a metal rod". Furthermore, Instruction No. 22, describing the assault with a dangerous weapon charge, required the jury to make two findings before it could render a guilty verdict:

1. That on or about the tenth day of December, 1973, at or near Fairbanks, Alaska, the defendant, James Ernest Des Jardins, while being armed with a metal rod did then and there unlawfully and intentionally assault John Mark Zdepski by striking said John Mark Zdepski on the arm with said metal rod;

2. That at the time and place alleged, the metal rod used by the defendant in assaulting John Mark Zdepski was a dangerous weapon.

We conclude that the instructions themselves were sufficiently clear on this issue. The trial judge did not abuse his discretion in refusing to answer the questions, although an answer would have been permissible, and a reference to the instructions desirable. The fact that the jury found Des Jardins guilty of assault with a dangerous weapon under the above instruction, when the same weapon must have been used to strike Cucuroll, tends to show that the jury resolved its question correctly.

Des Jardins argues that in fact the jury rendered guilty verdicts without finding that the rod had been used. He supports his argument with his attorney's affidavit, stating that a juror told him that the jury did not find that Des Jardins used the rod in either offense. As we have said repeatedly, an affidavit from a juror concerning the jury's behavior will not be considered to impeach the jury verdict except in instances where the affidavit alleges "'fraud, bribery, forcible coercion or any other obstruction of justice'".[23] A fortiori, such an affidavit from a person who spoke

---

22. *Bollenbach v. U. S.*, 326 U.S. 607, at 612–13, 66 S.Ct. 402, at 405, 90 L.Ed. 350, at 354 (1946); *see also U. S. v. Harris*, 388 F.2d 373 (7th Cir. 1967); *Powell v. U. S.*, 347 F.2d 156 (9th Cir. 1965); *Wright v. U. S.*, 102 U.S.App.D.C. 36, 250 F.2d 4 (1957); *State v. Irebaria*, 519 P.2d 1246 (Hawaii 1974); ABA Standards Relating to Trial by Jury, § 5.3, Approved Draft, 1968.

23. *Martinez v. Bullock*, 535 P.2d 1200 (Alaska 1975); *Gafford v. State*, 440 P.2d 405 (Alaska 1965); *West v. State*, 409 P.2d 847 (Alaska 1966).

to a juror will not be considered.[24] There is no allegation here of an obstruction of justice, and we do not consider the affidavit.

For the reasons stated above, we affirm the conviction but remand this matter to the superior court for a hearing on the question of the prosecutor's violation of Rule 16. If appropriate, the superior court should impose sanctions.

AFFIRMED AND REMANDED.

## OPINION ON REHEARING

Appellant James Des Jardins has petitioned for rehearing under Rule 27, Alaska Rules of Appellate Procedure,[1] alleging that our opinion in his appeal, *Des Jardins v. State,* (Alaska 1976) (Op. No. 2280), overlooked or misconceived certain issues. Of the issues enumerated by Des Jardins, we find that one merits further discussion. Des Jardins argued, *inter alia,* that he was entitled to a "defense of others" instruction with regard to the charge of assault with a dangerous weapon; this issue was not specifically dealt with in our opinion.

■■■■ Des Jardins requested a "defense of others" instruction for both the assault with a dangerous weapon and the homicide charges, his theory being that his striking Zdepski and his killing Cucuroll were acts justified by his defense of Zaverl.[2] We reject such a defense to the assault charge for the same reason we rejected it with regard to the homicide charge: lack of necessity. Although described in AS 11.15.100 as a defense to homicide, the "defense of others" defense is available to defendants charged with assault as well. To present such a defense, however, a defendant must show that the use of force was reasonably necessary in order to defend the "other" person.[3] Des Jardins failed to present any evidence of necessity for his striking Zdepski with the metal rod, just as he failed to make such a showing with regard to his killing Cucuroll. Therefore, the trial court's refusal to grant the instruction was proper.[4]

24. *Martinez v. Bullock,* 535 P.2d 1200 (Alaska 1975).

1. Alaska Rules of Appellate Procedure, Rule 27(a) provides:

 (a) *Grounds for Petition.* The court may order a rehearing of a matter previously decided if, in reaching its decision

 (1) The court has overlooked, misapplied or failed to consider a statute, decision or principle directly controlling; or

 (2) The court has overlooked or misconceived some material fact or proposition of law; or

 (3) The court has overlooked or misconceived a material question in the case.

 A rehearing will not be granted if it is sought merely for the purpose of obtaining a reargument on and reconsideration of matters which have already been fully considered by the court.

2. The facts of the case are set forth in our earlier opinion.

3. *Gray v. State,* 463 P.2d 897 (Alaska 1970). We do not reach the question of whether Zaverl was a member of a class which Des Jardins might have used force to protect; see AS 11.15.100(1).

4. We note also that Zaverl, whom Des Jardins says he was trying to defend, was the aggressor in the incident, and as such had severely limited rights to use force in his own defense. One who goes to the defense of another is not privileged to use more force than he could reasonably believe the person defended was entitled to use. *Commonwealth v. Martin,* 341 N.E.2d 885, 891 (Mass.1976); *United States v. Grimes,* 413 F.2d 1376 (7th Cir. 1969); A.L.I. Model Penal Code § 3.05 (Proposed Official Draft 1962).